UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>    v.<br><br>EDWARD WILLIAMS,<br>    *Defendant.* | No. 3:17-cr-121-(VAB)-1 |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Edward Williams ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 71 (Apr. 21, 2020) ("Def.'s Mot."); Mem. in Supp. of Mot. for Compassionate Release, ECF No. 71-1 (Apr. 21, 2020) ("Def.'s Mem.").

On April 23, 2020, the Court held a telephonic hearing on the motion,[1] Minute Entry, ECF No. 75 (Apr. 23, 2020), at which the Government, after having notified and obtained the views of victims in this case, informed the Court that it does not object to Mr. Williams's motion.[2]

For the reasons set forth below, the Court **GRANTS** Mr. Williams's motion for compassionate release.

Mr. Williams's term of imprisonment is reduced to **TIME SERVED**, and he shall be immediately released from Bureau of Prisons ("BOP") custody. His 36-month term of supervised release shall begin and, until August 19, 2021, he shall serve his term of supervised release on

---

[1] Mr. Williams did not appear at the hearing, but through his counsel, he waived any right to appear.

[2] To the extent the Victim Rights Act, 18 U.S.C. § 3771, applies to this proceeding, the Government represented that it complied with it by notifying Mr. Williams's victims about this proceeding.

1

home incarceration. All other conditions of supervised release from his July 16, 2019, judgment shall remain in effect.

## I.     BACKGROUND

On May 1, 2019, after Mr. Williams pled guilty to one count of bank fraud under 18 U.S.C. § 1344 and one count of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), the Court sentenced Mr. Williams to a total of fifty-four months of imprisonment, three years of supervised release, a special assessment of $200.00, and restitution. Minute Entry, ECF No. 63 (May 1, 2019); Judgment, ECF No. 66 (May 6, 2019); Second Am. Judgment, ECF No. 70 (July 16, 2019).[3]

On May 13, 2019, the Court entered a restitution order requiring Mr. Williams to pay restitution in the amount of $27,311.35. Restitution Order, ECF No. 68 (May 13, 2019).

On April 21, 2020, Mr. Williams filed an emergency motion for compassionate release from custody along with a memorandum of law. Def.'s Mot.; Def.'s Mem. Mr. Williams submitted two exhibits in support of his motion: a medical record, Def.'s Ex. A, ECF No. 73-1 (Wyatt Detention Facility Chronic Disease Treatment Planning Form (Jan. 23, 2019)), and an e-mail from a Senior Staff Attorney at Consolidated Legal Center Devens to Mr. Williams's counsel, Def.'s Ex. B, ECF No. 71-2 (E-mail from Stephanie Scannell-Vessella to Allison Near (Apr. 20, 2020)).

The Government represented at a telephonic hearing on April 23, 2020, that, after having communicated with the victims in this case, it does not object to Mr. Williams's motion for release.

---

[3] The Court amended its judgment twice on July 16, 2019, to correct technical errors, but it did not alter Mr. Williams's underlying sentence.

At the hearing, the Government read into the record various responses from Mr. Williams's victims, and one of Mr. Williams's victims addressed the Court during the hearing. The responses of the victims ranged from support of Mr. Williams's motion to strong opposition to his motion.

Having been given credit for time served from the date of his arrest, Mr. Williams began his term of incarceration on his arrest date, October 28, 2017. Def.'s Mem. at 1–2. He is incarcerated at the Federal Correctional Institution at Fort Dix in Fort Dix, New Jersey. *Id.* at 1. Mr. Williams's scheduled release date is currently August 19, 2021. *Id.* at 2. "At this point, Mr. Williams has been incarcerated for 30 months, which is roughly the equivalent of 35 months with good time." *Id.* at 2 n.1.

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III.   DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and

4

"[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Williams argues that his significant medical history and the current COVID-19 pandemic together constitute "extraordinary and compelling reasons" warranting a sentencing reduction. Def.'s Mem. at 1. He argues further that his "health status and age place him squarely within the recommendations made by Attorney General Barr regarding inmates who should be discharged to home confinement in order to limit the spread of COVID-19." *Id.* at 3 (citing Office of the Attorney General, *Memorandum for Director of Bureau Prisons Re: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf).

The Court agrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Norris*, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU) (Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection. Therefore, for the reasons set forth in his motion, I conclude that his medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence[.]" (internal citations omitted)); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13,

2020) ("[Mr.] Smith is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma . . . . [Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (footnotes omitted)) ("COVID-19 presents a heightened risk for incarcerated defendants . . . with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease." (footnotes omitted)).

Even before he began to serve his sentence, Mr. Williams suffered from a variety of ailments, including asthma, hypertension, and diabetes, that put him at increased risk should he contract COVID-19. In advance of his sentencing, the Probation Office noted that:

> Mr. Williams reported he has a history of health problems related to chronic asthma, hypertension, attention deficit hyperactivity disorder, and high cholesterol. He provided he has a history of being treated for kidney issues. He noted he also has a history of triple bypass surgery and that his medical providers are considering putting in stents.

Presentence Report ¶ 178, ECF No. 50 (Mar. 12, 2019). While in custody at Wyatt Detention Facility before his sentencing, he also received a diabetes diagnosis. Pl.'s Ex. A. For these

6

various medical conditions, Mr. Williams had been prescribed a variety of medication. Presentence Report ¶ 179, ECF No. 50 (Mar. 12, 2019) (listing the following medications: Asmanex HFA, 200 mg; Ventolin HFA, 90 mg; Albuterol, 3 ml 0.083% via nebulizer; Chlorthalidone, 25 mg; Lisinopril, 20 mg; Metroprolol, 50 mg; Atorvastatin, 20 mg; Ecasa, 81 mg; Zantac, 300 mg; and Tylenol, 650 mg).

Mr. Williams argues, based on scientific publications, that that "[j]ails and prisons are sites of disproportionate infections disease rates" and that "conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases." Def.'s Mem. at 7 (citing Leonard S. Rubenstein, et al., *HIV, Prisoners, and Human Rights*, LANCET (July 14, 2016), available at https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext; and Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 CLINICAL INFECTIOUS DISEASES 8, 1047–55 (Oct. 15, 2007), available at https://doi.org/10.1086/521910).

Indeed, COVID-19 cases have already been confirmed at multiple Bureau of Prisons ("BOP") facilities, and BOP continues to identify additional cases each day. As of April 23, 2020, BOP has identified 620 inmate cases and 357 staff cases; and twenty-four inmates have died in BOP custody. U.S. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 23, 2020). And, as of April 23, 2020, there are twelve inmates and four staff members at FCI Fort Dix who are positive for COVID-19. *Id.*

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Williams argues that he has "has applied for and

7

effectively been denied relief from the Bureau of Prisons" for purposes of the exhaustion requirement because he has an existing state detainer and the Bureau of Prisons has made clear that individuals with state detainers are ineligible for reduction in sentence. Def.'s Mem. at 4. Under these circumstances, the Government does not disagree that the exhaustion requirement has been met.

Having demonstrated that he suffers from asthma, hypertension, diabetes, and other health conditions that place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated, a reduction of Mr. Williams's sentence to time served is consistent with U.S.S.G. § 1B1.13.

Extraordinary and compelling reasons warrant the reduction, and Mr. Williams will be on supervised release at home during the time he would have been incarcerated, addressing any concern as to his danger to any other person or the community.

Moreover, at the telephonic hearing, the Government represented that it does not object to Mr. Williams's motion. And while the views of Mr. Williams's victims range widely regarding his release, the balance of factors considered by the Court warrant his release, notwithstanding any opposing views. On this record, it is clear: Mr. Williams's medical condition is serious, and he warrants protection from the risks of COVID-19, a risk that has been heightened by the outbreak of the pandemic at his current facility.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

IV. **CONCLUSION**

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Williams's term of imprisonment is reduced to

**TIME SERVED**. It is **ORDERED** that Mr. Williams be released immediately to begin his three-year term of supervised release.

Upon his release and until August 19, 2021, Mr. Williams shall serve his term of supervised release on home incarceration. Under 18 U.S.C. § 3583(e), a term shall be added to his supervised release conditions requiring that Mr. Williams refrain from contact with any victim or witness from his case. All other conditions of supervised release from his July 16, 2019, judgment shall remain in effect.

Upon returning to his home, Mr. Williams shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of April, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge